Cowin, J.
Plaintiff Alan Tarin (“Tarin”) seeks judicial review of the defendant Division of Medical Assistance’s (“the Division”) decision to disallow deduction of Tarin’s court-ordered child support from his *497 required contribution to his nursing home care. For the reasons discussed below, the Court affirms the Division’s decision.
BACKGROUND
Tarin is a 47-year-old man who suffers from Parkinson’s Disease. In May, 1993, Tarin and his wife were divorced. As part of the divorce decree, Tarin was ordered to pay weekly child support for his two children.
In July, 1993, Tarin entered the Mediplex nursing home, located in Lexington, Massachusetts (“Mediplex”). By notice dated September 20, 1993, Tarin was informed that his patient paid amount was to be increased because he could no longer deduct child support from his countable income.[2] The reason for this increase was because the relevant regulations permit a deduction for child support only when the children reside with a spouse who lives in the community.
Tarin appealed the decision and an administrative fair hearing was held on November 22, 1993. The Appeals Referee upheld the decision and Tarin filed this petition for judicial review pursuant to G.L.c. 30A, §14. Tarin claims that the agency decision was based on an error of law, is in excess of statutory authority, is made upon unlawful procedure, and is in violation of federal and state constitutional provisions. G.L.c. 30A, §14(7)(a),(b),(c) and (d).
DISCUSSION
The party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. Merisme v. Board of Appeal on Motor Vehicle Liability Policies & Bonds, 27 Mass.App.Ct. 470, 474 (1989). In reviewing the agency decision, the court is required to give due weight to the agency’s expertise, technical competence, specialized knowledge and the discretionary authority conferred upon it by statute. Flint v. Commissioner of Public Welfare, 412Mass. 416, 420 (1992). The court may not substitute its judgment for that of the agency. Southern Worcester County Regional Vocational School Dist. v. Labor Relations Comm’n, 386 Mass. 414, 420-21 (1982).
Definition of “community spouse”
Federal and state Medicaid regulations permit a long-term care recipient to deduct both a spousal and family maintenance needs allowance for qualified family members from countable income. Such deductions allow a recipient to contribute less of their personal income towards their long-term care. Federal regulations provide in pertinent part:
(a)Basic rules. (1) The agency must reduce its payment to an institution for services provided to an individual specified in paragraph (b) of this section, by the amount that remains after deducting the amounts specified in paragraphs (c) and (d) of this section, from the individual’s total income
(b) Applicability. This section applies to medically needy individuals in medical institutions and immediate care facilities . . .
(c) Required deductions. The agency must deduct the following amounts, in the following order, from the individual’s total income, as determined under paragraph (e) of this section. Income that was disregarded in determining eligibility must be considered in this process . . .
(2) Maintenance needs of spouse. For an individual with only a spouse at home, an additional amount for maintenance needs of the spouse . . .
(3) Maintenance needs of family. For an individual with a family at home, an additional amount for the maintenance needs of the family . . .
State Medicaid regulations governing these deductions are substantially similar to the federal regulations with the following exceptions. A spousal maintenance needs allowance is given to institutionalized recipients “to provide for the maintenance needs of his or her spouse in the community.” 130 C.M.R. §506.220(B). A family maintenance needs allowance is given only to qualified family members who “reside with the community spouse.” 130 C.M.R. §506.220(C).
Tarin argues that his former spouse should be considered a “community spouse,” and that, therefore, he should be allowed to take a family maintenance allowance deduction. He contends that the Court can infer from legislative intent that the term “spouse” also means “former spouse” in the context of family support.
The terms “community spouse” and “institutionalized spouse” are defined in 42 U.S.C. §1396r-5(h). An “institutionalized spouse” is a person who “(A) is in a medical institution or nursing facility . . . and (B) is married to a spouse who is not in a medical institution or nursing facility.” 42 U.S.C. §1396r-5(h)(l) (emphasis added). A “community spouse” is defined as “the spouse of an institutionalized spouse.” 42 U.S.C. §1396r-5(h)(2). These definitions clearly create the requirement of a present marriage. Given such express statutory language, the Court is not free to extend the family maintenance needs allowance to include former as well as present spouses.
Claim of contravention with federal law
Tarin also argues that state regulations governing family maintenance needs allowances are impermissibly more restrictive than federal regulations in that they require that dependent children reside with the community spouse. Tarin contends that this is in direct contravention of federal law which prohibits states from being more restrictive in their methods of financial determinations. 42 U.S.C. §1396a(r)(2). However, similar language requiring that family members reside with the community spouse is found in Title XIX of the Social Security Act, 42 U.S.C. §1396r-5(d)(l). Section 1396r-5(d)(l) provides for a family allowance *498 to be offset from the income of an institutionalized spouse only for those family members “who are residing with the community spouse.” 42 U.S.C. §1396r-5(d)(1). Interpreting the federal regulations as consistent with the federal legislation, these regulations require that family members reside with the community spouse. State regulations governing the family maintenance needs allowance comply with and do not contravene the federal Medicaid statute.
Tarin also contends that the Division should not include Tarin’s court-ordered child support in its calculation of his patient paid amount because the money is not “available” to him.[3] Tarin argues that the word “available” should be given its ordinary meaning and construed to exclude court-ordered child support. He argues child support is a particularly fundamental obligation which has been given a higher priority than other obligations in a variety of contexts. Tarin also points out that failure to comply with support orders could subject him to criminal penalties. For all these reasons, he argues that child support should not be considered as income “available” to him for his nursing home care.
In order to determine Medicaid eligibility and benefit levels, a state may consider income and resources “available” to the applicant or recipient. 42 U.S.C. §1396a(a)(17)(B). The term “available” is not defined in §1396a(a)(17)(B); instead the statute expressly delegates to the Secretary the discretionary authority to define the term.[4]
The U.S. Court of Appeals for the eighth and second circuits have held that the Secretary’s policy to include court-ordered child support as “available” income under 42 U.S.C. §1396a(a)(17)(B) is a permissible construction of the statute. Himes v. Shalala, 999 F.2d 684 (2nd Cir. 1993); Emerson v. Steffen, 959 F.2d 119 (8th Cir. 1992). This Court finds the reasoning in these cases persuasive. The legislative history suggests that reference to availability of income was intended to prevent false attribution of income never received, not income received and then paid out by the Medicaid recipient. Himes v. Shalala, supra at 689; Emerson v. Steffen, supra at 122. Furthermore, §1396a(a)(17)(B) specifically confers upon the Secretary the authority to define the term “available,” and that interpretation is entitled to deference.[5] The State is entitled to treat Tarin’s court-ordered child support as “available” income for the purposes of determining his contribution towards his own long-term care.
Constitutional Claims
Finally, the plaintiff argues that federal and state regulations at issue in this case improperly discriminate against a class of children based on their parents’ marital status. Tarin also contends that the classifications of children created by the Division’s regulations have no rational basis and do not further a legitimate state purpose.
It is well settled that in the context of government benefits programs classifications created by statutes and regulations need only have a rational basis. Califano v. Aznavorian, 439 U.S. 170, 174 (1978). (“Social welfare legislation, by its veiy nature, involves drawing lines among categories of people, lines that necessarily are sometimes arbitrary.”) Furthermore, marital status of the recipient is a permissible basis upon which to differentiate between potential classes of recipients. See Mathews v. DeCastro, 429 U.S. 181 (1976) (upholding Social Security provision allowing payment of monthly benefits to spouse with dependent children while not allowing similar benefits to divorced spouse with dependent children).
The plaintiffs reliance on Weber v. Aetna Casualty & Surety Co., 406 U.S. 164 (1972) and Jimenez v. Weinberger, 417 U.S. 628 (1974) is misplaced. In Weber, the Supreme Court struck state laws which impermissibly discriminated against illegitimate children in the availability and amount of benefits provided them under the state workers’ compensation program. In Jimenez, the Court similarly held unconstitutional social security regulations which denied benefits to illegitimate children born after the onset of a parent’s disability. Unlike the present case, both Weber and Jimenez involved a child’s own individual claim for benefits. The instant case does not concern benefits available to the Tarin children, but rather the extent of their father’s benefits.
ORDER
For the foregoing reasons, it is hereby ORDERED that the decision of the Division of Medical Assistance is AFFIRMED.

A Medicaid recipient’s contribution to his own long-term care is known as the “patient paid amount.” The patient paid amount is determined by subtracting allowable deductions such as spousal or family needs allowances from countable income. The amount due a long-term care facility in excess of the patient paid amount is paid by the Medicaid program.

 42 U.S.C. §1396a(a)(17)(B) provides that a state’s assessment of the financial need of an applicant or recipient must “tak[e] into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient. . .”

“Secretary” refers to the Secretary of the United States Department of Health and Human Services.

Tarin has argued that Himes and Emerson are distinguishable because both of these cases concerned the definition of available income for purposes of Medicaid eligibility rather than to determine the extent of medical assistance provided under the plan. This Court sees no reason to treat eligibility and post-eligibility determinations differently. See Peura By and Through Herman v. Mala, 977 F.2d 484, 487 n.4 (9th Cir. 1992).